## GUIDE LAMP CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

### No. 5385.

Circuit Court of Appeals, Seventh Circuit.

March 27, 1935.

Orville J. Taylor, Preston Boyden, and Stephen A. Mitchell, all of Chicago, Ill. (Henry M. Hogan and David Scher, both of New York City, of counsel), for petitioner.

Wendell Berge, Sp. Asst. to Atty. Gen., Harold M. Stephens, Asst. Atty. Gen., and Robert B. Watts, Sp. Counsel, National Labor Relations Board, of New York City, for respondent.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

This petition seeks to review and set aside an alleged order of the National Labor Relations Board. The question now before us arises over respondent's motion to dismiss the petition on the ground that it does not present a matter reviewable by this court.

Section 7 (a) of the National Industrial Recovery Act, 48 Stat. 198, 15 USCA § 707 (a), provides as follows:

"Every code of fair competition, agreement, and license approved, prescribed, or issued under this chapter shall contain the following conditions: (1) That employees shall have the right to organize and bargain collectively through representatives of their own choosing, and shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; (2) that no employee and no one seeking employment shall be required as a condition of employment to join any company union or to re-

frain from joining, organizing, or assisting a labor organization of his own choosing; and (3) that employers shall comply with the maximum hours of labor, minimum rates of pay, and other conditions of employment, approved or prescribed by the President."

In order to effectuate the policy of the Industrial Recovery Act, Congress by statute, June 16, 1933, authorized the President to establish such agencies as he might find necessary, to prescribe their authorities, duties and responsibilities, and to delegate to such agents any of his functions and powers under the Act. 48 Stat. 195, § 2, 15 USCA 702. By virtue of the authority thus granted, he established the National Labor Board on August 5, 1933, and on December 16, 1933, by Executive Order No. 6511, he authorized that Board:

"(2) (a) .To settle by mediation, conciliation, or arbitration all controversies between employers and employees which tend to impede the purposes of the National Industrial Recovery Act, provided, however, the Board may decline to take cognizance of controversies between employers and employees in any field of trade or industry where a means of settlement, provided for by agreement, industrial code, or Federal law, has not been invoked.

"(b) To establish local or regional boards upon which employers and employees shall be equally represented, and to delegate thereto such powers and territorial jurisdiction as the National Labor Board may determine.

"(c) To review the determinations of the local or regional boards where the public interest so requires.

"(d) To make rules and regulations governing its procedure and the discharge of its functions."

By Executive Order No. 6580,) the National Labor Board, on February 1, 1934, was empowered to conduct employee elections and thereafter to publish promptly the names of those representatives who were selected by the vote of at least a majority of the employees, and had been. thereby designated to represent all the employees eligible to participate in such an election for the purpose of collective bargaining or other mutual aid or protection in their relations with their employer.

The Indianapolis Regional Labor Board called such an election in petitioner's manufacturing plant and it was held on March 19, 1934. It resulted in 329 employees voting in favor of Metal Polishers International Union, Local No. 52, as a representative, and 286 employees voting in favor of Guide Employees Association as a representative, and there were 41 employees who refrained from voting, although they were eligible to vote.

On June 19, 1934, Congress adopted Public Resolution No. 44 (c. 677, 48 Stat. 1183) which includes the following sections:

" * * * In order to further effectuate the policy of [the National Industrial Recovery Act] * * * the President is authorized to establish a board or boards authorized and directed to investigate issues, facts, practices, or activities of employers or employees in any controversies arising under section 7a of said Act [section 707 (a) of this title] or which are burdening or obstructing, or threatening to burden or obstruct, the free flow of interstate commerce. * * *" (15 USCA § 702a).

"Sec. 2. Any board so established is hereby empowered, when it shall appear in the public interest, to order and conduct an election by a secret ballot of any of the employees of any employer, to determine by what person or persons or organization they desire to be represented in order to insure the right of employees to organize and select their representatives for the purpose of collective bargaining as defined in section 7 (a) of said Act [section 707 (a) of this title] and now incorporated herein.

"For the purposes of such election such a board shall have the authority to order the production of such pertinent documents or the appearance of such witnesses to give testimony under oath, as it may deem necessary to carry out the provisions of this resolution [of sections 702a to 702f of this title]. Any order issued by such a board under the authority of this section may, upon application of such board or upon petition of the person or persons to whom such order is directed, be enforced or reviewed, as the case may be, in the same manner, so far as applicable, as is provided in the case of an order of the Federal Trade Commission under the Federal Trade Commission Act [sections 41 to 51 of this title]." (15 USCA § 702b).

"Sec. 3. Any such board, with the approval of the President, may prescribe such rules and regulations as it deems necessary to carry out the provisions of this resolution

[sections 702a to 702f of this title] with reference to the investigations authorized in section 1 [section 702a of this title], and to assure freedom from coercion in respect to all elections." (15 USCA § 702c).

"Sec. 4. Any person who shall knowingly violate any rule or regulation authorized under section 3 of this resolution [section 702c of this title] or impede or interfere with any member or agent of any board established under this resolution [sections 702a to 702f of this title] in the performance of his duties, shall be punishable by a fine of not more than $1,000 or by imprisonment for not more than one year, or both." (15 USCA § 702d).

By Executive Order No. 6763, of June 29, 1934, the President, pursuant to the Congressional Resolution No. 44, created the National Labor Relations Board. This Board was given authority to proceed with all investigations and proceedings then being conducted by the National Labor Board which was abolished. The Executive Order further provided that findings of fact and *orders* of the National Labor Relations Board should be final and not subject to review by any person or agency in the *executive* branch of the government, except as provided in section 3 (a) (3): "To receive from such regional, industrial, and special boards as may be designated or established under the two preceding sub-sections reports of their activities and to review or hear appeals from such boards. * * *"

On June 28, 1934, the Indianapolis Regional Labor Board, by its subcommittee, held a hearing with respect to this controversy. The petitioner, although notified of the hearing, did not attend, nor was it represented. At that meeting the sub-committee stated:

"* * * We have instructions from NLB that we shall make a decision and then let it go to Washington if the company refuses to comply with that decision. It will be brought before the Board next Tuesday; we, as a sub-committee, will report the case, (the) Board will make its decision * * * and a length of time for compliance will be given and then the case will probably go to Washington."

A further hearing was had by the Indianapolis Regional Board on July 5, 1934, at which it made the following recommendation:

"That * * * The Guide Lamp Corporation should meet with the duly accredited representatives of the Metal Polishers International Union, Local No. 52, as representatives of all employees eligible to membership in International Metal Polishers Union, in departments * * * of the Guide Lamp Corporation Plant. * * *

"That the Guide Lamp Corporation meet with the accredited representatives of * * * Union * * * on or before July 11, 1934. In the event such meeting is not consummated by July 11, 1934, the case shall be referred to the National Labor Board, Washington, D. C."

On August 13, 1934, a hearing with respect to this controversy was held before the National Labor Relations Board at Washington. The Chairman of the Board said:

"* * * The Indianapolis Regional Board, following an election in which the majority of the ballots was cast in favor of the union, ordered that the union is the bargaining agency for all of the employees of the departments concerned, and that the company should meet with the representatives of the union for the purpose of collective bargaining.

"The case comes before this Board on the basis of that ruling.

"I take it that no questions of fact are involved at this time; it is merely a question of what the obligations of the company are under Section 7 (a) as a result of this election.

"The Board will be glad to hear arguments on that matter. * * *"

No further evidence was heard, and on September 4, 1934, the Board rendered its written decision stating, among other things:

"In order to bring matters to a head the Indianapolis Board called a hearing on June 28, at which the company declined to be present. On July 5, the Indianapolis Board issued a ruling which held that the company must meet with the duly accredited representatives of the Union as representative of all employees eligible to membership in the Union in the departments wherein the election had been conducted. Upon the company's failure to comply with this decision the matter was referred to this Board. * * *

"We therefore hold, in accordance with the Houde decision, that the Guide Lamp Corporation must make every reasonable effort to enter into a collective agreement with Local No. 52 of the Metal Polishers International Union as the exclusive bar-

gaining agency for the employees eligible to participate in the election of March 19, 1934.

"*Findings*. The Guide Lamp Corporation has violated Section 7 (a) by interfering with the self-organization of its employees, impairing their right of collective bargaining and refusing to bargain collectively within the meaning of that section in that it has refused to recognize the * * * Union * * * as the exclusive bargaining agency of its employees eligible to participate in the election of March 19, 1934.

"*Enforcement*. Unless within ten days from the date of this decision the Guide Lamp Corporation notifies the Board in writing that it recognizes the * * * Union * * * as the exclusive bargaining agency of its employees eligible to participate in the election of March 19, 1934, and that, when requested by the Union, it will enter into negotiations with the Union and endeavor in good faith to arrive at (a) collective agreement covering terms of employment of all employees eligible to participate in the election, the case will be referred to the National Recovery Administration and to the enforcement agencies of the Federal Government for appropriate action."

The interpretation of section 7 (a) of the National Industrial Recovery Act, 15 USCA § 707 (a) is a matter concerning which there has been and is now a marked difference of opinion, as to the meaning of the provision: " * * * Employees shall have the right to organize and bargain collectively through representatives of their own choosing. * * * " The Board has taken the position that the Executive Orders and the Board's rules and orders hereinbefore referred to gave the union which had received a majority of the votes cast the right to represent and bargain in behalf of all the employees who were eligible to vote at the election, while the petitioning corporation recognizes the union as the representative of only those employees who voted for it. It is this contention of petitioner which is sought to be presented on its merits by the petition.

We think, however, that the question is not rightfully presented here because the Board's attempted legal interpretation of the statute with respect to the effect of the election was not contemplated by the statute and was not binding on the parties, hence there was no legal determination of that question from which an appeal would lie. Moreover, this court has jurisdiction only to review orders issued by the Board under the authority of section 2. The only orders which that section authorizes the Board to issue are to conduct elections by secret ballots, and to compel the production of such pertinent documents or the appearance of such witnesses as are necessary for carrying out the elections. When the result of the election was known it was the duty of all parties interested to co-operate in that result according to the terms of the statute. The difficulty between the parties lies in the interpretation of the terms of the statute with respect to what constitutes such proper co-operation, and neither party had a right to finally determine that question. In such case if the Board thought that petitioner was not properly co-operating in the result of the election, it was its duty under the law to certify that fact to the enforcing officers. This it did, and even though it attempted to do more, its actions with respect thereto can not constitute the basis for appeal to this court. Cf. Ames Baldwin Wyoming Co. v. National Labor Relations Board (C. C. A.) 73 F.(2d) 489.

The petition for review is dismissed.